308 P.2d 577

INSURANCE, Inc., a corporation,
Plaintiff-Appellee,

v.

Chris FURNEAUX, d/b/a Furneaux Agency,
Defendant-Appellant.

No. 6157.

Supreme Court of New Mexico.

March 11, 1957.

William J. Torrington, Thomas N. Keltner, Albuquerque, for appellant.

Simms, Modrall, Seymour, Sperling & Roehl, Thomas J. Smiley, Albuquerque, for appellee.

McGHEE, Justice.

Plaintiff, Insurance Incorporated, was a local insurance agent in Albuquerque, New Mexico, for Great American Casualty Company, a Texas Corporation. Defendant, Furneaux Agency, was the general agent in the State of New Mexico for Great American Casualty Company. Great American was placed in the hands of a receiver in Texas on either June 17, 1954 or July 7, 1954. Shortly thereafter an ancillary receiver was appointed in New Mexico.

The plaintiff brought this action against the defendant for return premiums (unearned) which resulted from plaintiff's cancellation of policies written in General American Casualty Company. The trial court found on conflicting evidence that such cancellations were made under instructions from the defendant. The effective cancellation date of the policies was June 8, 1954. Upon cancellation of the Great American policies, the plaintiff rewrote the policies in other insurance companies.

The defendant rendered a monthly "account current" to the plaintiff which reflected sums owed by or sums due to the plaintiff. The defendant also rendered a monthly "account current" to Great American Casualty Company. The last "account current" rendered by the defendant to the plaintiff showed that plaintiff had a $3,283.65 credit due for unearned premiums on all policies cancelled as of June 8, 1954. The auditor of the New Mexico Superintendent of Insurance, after examining the books of both plaintiff and defendant, determined that the actual amount due the plaintiff for unearned premiums was $8,813.46. The discrepancy is apparently due to the fact that certain of the policies cancelled June 8, 1954 were in the hands of third parties and were not returned to the defendant in time to appear on the "account current."

It is defendant-appellant's contention that if any sums are due to plaintiff-appellee, they are due from the receiver of Great American Casualty Company. The basis for this contention is the agency contract between Great American and the plaintiff.

The relationship of local agent, general agent and insurance company cannot be decided solely upon general agency principles; these relationships in the insurance field have their own peculiar obligations. The court must look to the realities of the situation in determining whether the local agent is liable to the general agent for the collection of premiums or whether he is responsible to the company. If the local agent is responsible to the company

for the collection of premiums, then the company is responsible to the local agent for return premiums; if the local agent is responsible to the general agent for the collection of premiums, then the general agent is responsible to the local agent for return premiums.

As counsel have pointed out, the problem involved in this litigation was not specifically dealt with by the court in any of the cases cited in either brief. In Union Mutual Casualty Insurance Corp. v. Insurance Budget Plan, Inc., 1935, 291 Mass. 62, 195 N.E. 903, 98 A.L.R. 1422 the court held that amounts collected for unearned premiums which the agent had applied to replacement of insurance in other companies was not a breach of the trust imposed by the agency agreement. In Bohlinger v. Zanger, 1954, 306 N.Y. 228, 117 N.E.2d 338 the plaintiff, as statutory liquidator of an insolvent insurer, brought an action to recover total premiums paid to the defendant insurance broker. The court held that the liquidator was entitled to recover only net earned premiums. The rationale for the decision was that the New York statute prescribing that insurance brokers hold collected funds as fiduciaries was written with knowledge that brokers, under ordinary circumstances, generally remit unearned premiums in their possession directly to the insured when policies are cancelled. In Downey v. Humphreys, 1951, 102 Cal.App.2d 323, 227 P.2d 484 the

court reasoned that since the insurer had normally credited the insurance broker for unearned premiums which the latter had remitted directly to the insured upon policy cancellations in the ordinary course of business, this right of set-off remained available to the broker upon the insurer's liquidation. The court stated that the unearned premiums belonged to the policyholders and the receiver did not have any better right than the insurance company to the unearned premiums. A contrary result was reached in Maloney v. Rhode Island Insurance Co., 1953, 115 Cal.App.2d 238, 251 P.2d 1027 and in Bohlinger v. Mayville Realty Co., Sup., 135 N.Y.S.2d 865, affirmed 285 App.Div. 1045, 141 N.Y.S.2d 509; Id., 286 App.Div. 832, 143 N.Y.S.2d 627.

▮▮▮ None of the above cases dealt with litigation between a local agent and a general agent. Their only significance for purposes of this case is in determining whether or not unearned premiums are held as trust funds, and if so, for whom. We believe the better view is that when policies are cancelled in the ordinary course of business, the unearned premiums are not held in trust by the local agent for the general agent or the company but for the policyholder. See Downey v. Humphreys, 1951, 102 Cal.App.2d 323, 227 P.2d 484. When the local agent has returned the unearned premium to the policyholder or has rewritten the cancelled policy in another company, the local agent has a right

of set-off. This brings us squarely to the essential question in this case. Does the local agent have this right of set-off against the general agent or the company?

Defendant's position in this case is that the plaintiff local agent was an agent of the company only; that therefore, the plaintiff's right of set-off for unearned premiums is against the company. It would follow from this premise that if the local agent had a credit due him, it would be due from the company. The plaintiff was an agent of Great American Casualty Company, but he was also an agent of the defendant. His primary obligation was to defendant Furneaux Agency. This is established by customary procedures in the field of insurance. Local agents are appointed by, responsible to, and terminated by the general agent. The company in turn looks to, and holds the general agent responsible for, all business produced by him and his local agents. If, contrary to the usual relationship that exists between local agent, general agent, and company, the defendant general agent was simply a company overseer or clearinghouse for the company's business, the defendant should have established this differing relationship by substantial evidence. This he failed to do. He did not introduce in evidence the contract between himself and the company.

· The usual course of dealing between the plaintiff and the defendant was established by the evidence. The defendant charged the plaintiff with all premiums written by him less return premiums for cancelled policies and less commissions. As to the financial status between plaintiff and defendant this procedure would seem to establish a debtor-creditor relationship. All matters relating to payment of premiums and credits for cancellations were between defendant general agent and plaintiff local agent. This is typical of the ordinary business practice in the field of insurance. The company holds the general agent responsible for the collection of premiums produced in his area; the general agent holds the local agent responsible for business produced from his agency. The general agent credits the local agent for return premiums accruing as a result of cancellations on business produced from his agency. The general agent then looks to the company for credit on return premiums from business produced by his agents.

In refutation of the above, the defendant contends that he was simply an agent of the company in establishing an agency contract between the plaintiff and the company. As we view the entire record it does not so indicate. A monthly "account current" was rendered by defendant to plaintiff. The plaintiff had no financial dealings with the company. Furthermore as heretofore stated, the trial court found as a fact on substantial evidence that the defendant instructed the plaintiff to cancel all policies written in General American

Casualty Company. Witness Kile testified that he had been so instructed by defendant. Furthermore, Mr. Kile wrote the following letter to Mr. Furneaux on June 24, 1954: *"Pertaining to your request,* we have cancelled all insurance policies written in General American Casualty as of June 8, 1954." (Emphasis added.) Mr. Furneaux testified that he had voiced no objection to this letter.

It should also be noted that many of the defendant's local agents not only cancelled General American policies in accordance with this instruction, but also rewrote the policies in a company controlled by the defendant. The net effect of such procedure was to credit the local agents for return premiums. It was simply a substitution of policies in the new company for cancelled General American policies. No charge was made to the local agents for these policies rewritten in the new company.

That the primary financial relationship in this case was between the defendant and the plaintiff is further established by defendant's claim against the company receiver for the return premiums here involved: The filing of this claim contradicts the defendant's contention that the company and not he owes the plaintiff for such return premiums. The defendant, while seeking to offset these same return premiums against the company receiver, is contending here that it is the company who owes them to defendant.

The above factors are conclusive in establishing the relationship between the defendant and the plaintiff in regard to return premiums as one of debtor and creditor.

Defendant-appellant also contends that the receiver of Great American Casualty Company was an indispensable party to this action under Section 21–1–1 (19), N.M.S.A.1953. If the appellant had been correct in his contention that the company was responsible to the plaintiff for return premiums, this would, of course, be true. However, since the liability for return premiums due the plaintiff rests upon the defendant and not the company, the receiver was not an indispensable party to this action.

The judgment is affirmed.

It is so ordered.

LUJAN, C. J., and SADLER, J., COMPTON and KIKER, JJ., concur.