Herb SHOUP, d/b/a Oklahoma Farmers
Union, Plaintiff in Error,

v.

Alien L. MAYERSON, Receiver of Exchange
Casualty and Surety Company, a Cor-
poration, Defendant in Error.

No. 43251.

Supreme Court of Oklahoma.

April 15, 1969.

Rinehart, Morrison, Cooper & Stewart, Oklahoma City, for plaintiff in error.

Ross, Holtzendorff & Bond, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

This appeal involves the right of the defendant in error, Mayerson, Receiver of the above named insurance company (hereinafter referred to as the "insurer") to recover from the above named insurance agent appearing herein as plaintiff in error, the unearned portion of premiums on certain of said company's insurance policies, that had been issued to customers of said agent.

A receiver was appointed for the insurer by an order of a Michigan Court on March 22, 1962. By subsequent order of the same court, defendant in error (hereinafter referred to as "plaintiff") became that individual's successor as the insurer's receiver. Thereafter, on April 3, 1962, said Court, by order entered in the receivership proceedings, cancelled some of these insurance policies, whose unearned premiums—collected by plaintiff in error (hereinafter referred to as "defendant"), but unremitted to the insurer—amounted to the sum of $2385.85. Unearned premiums, never remitted to the insurer or to plaintiff, on other policies, cancelled shortly before that date, amounted to another $590.27.

In plaintiff's petition thereafter filed to commence this action, he alleged, among other things, that under the insurer's Agency Agreement with defendant he was the insurer's trustee of these premiums. Plaintiff further alleged that defendant had failed and refused to account for, and deliver, them to the insurer, though proper demand had been made therefor. Plaintiff prayed for an accounting of these sums totalling more than $2900.00 (among other items) and for their recovery against defendant.

Defendant's answer to plaintiff's petition was, in material substance, a general denial.

At the trial, it was indicated that defendant did not then have the subject unearned premiums, it being stipulated, among other things, that when the policies, for which they had been paid to defendant, were cancelled, defendant either refunded them to those who had paid them to him, or expended them in providing the insureds with replacement policies in another company.

The principal basis of plaintiff's claim that these moneys were trust funds belonging to the insurer and held by defendant, as its trustee, is certain provisions of the aforementioned Agency Agreement, and an "addendum" thereto. These provisions, which refer to defendant as "Agent", and to the insurer as "Company", read as follows:

"The Agent shall hold and keep all premiums as a fiduciary trust, separate and apart from all other moneys belonging to the Agent, and pay such premiums to the Company in the manner hereinafter set forth. It is understood that all premiums paid to the Agent are the property of the Company, that commissions payable hereunder are debts due the Agent by the Company and that the privilege herein granted of deducting commissions from said premiums shall not be taken as a waiver by the Company of its exclusive ownership therein. Should any dispute arise, all such money and property may be remitted with full reservation of any and all rights.

\* \* \* \* \* \*

"The Agent agrees to pay on the basis of the Company's Account Current, not later than 45 (forty-five) days after the

last day of the month for which the account is rendered, the next amount due the Company on all transactions made by the Agent on behalf of the Company, receipted and processed at the Administrative Office of the Company, during the month for which the account is made.

"Failure of the Agent to remit in accordance with this Agency Agreement shall, after five days, upon receipt of written notice or telegram, suspend all conditions of this Agency Agreement in accord with the termination provisions listed in paragraph 21 (twenty-one) herein.

"Reinstatement of this Agency Agreement shall depend upon the agreement of the parties hereto, in writing, and acceptance each from the other, of mutually satisfactory arrangements for conclusion of any indebtedness by the Agent to the Company.

"The signing of the Agency Agreement is Power of Attorney of the Agent, to the Company, to freeze and suspend all fiduciary trust accounts in the name of the Agent, his employees, sub-agents, or brokers, held for the Company, in the event of suspension, termination, audit required thereby, or as a result thereof.

"Any expense incurred by the Company for legal fees, actions at law, or in any Court of Equity resulting from the failure of the Agent to comply with the several terms of this Agency Agreement shall be deemed the obligation of the Agent, and payable upon demand to the Company."

During the trial, it was further shown that the cancellation of those policies, that were cancelled before entry of the aforementioned receivership court order (cancelling other policies), was instigated by a letter mailed on March 19, 1962, to the persons insured under them. In said letter, defendant informed those persons that the insurer was "experiencing difficulties" in Oklahoma; and he not only suggested, but requested, that they return their policies to his office, promising that he would ei-

ther refund the unearned portion of the policies' premiums or apply that amount on the premiums of new policies he would obtain for them "with another company."

(The afore-mentioned stipulation by the litigants herein indicated that the date of the above described letters (March 19, 1962) was "after" the appointment of a receiver for the insurer, though that date is a few days before the earliest date on either of the orders of appointment evidenced by the exhibits in the record).

At the close of the trial, the court entered a general money judgment for plaintiff in the sum of the afore-mentioned amounts totalling $2,976.12 with interest and costs, and an additional sum of $200.00 as plaintiff's attorney fee.

After the overruling of his motion for a new trial, defendant lodged the present appeal.

For reversal of the trial court's judgment, defendant argues, in substance, that the trial court erred in rendering judgment for plaintiff because an insurer, like the one whose interests he represents, is not entitled, upon cancellation of its policies, to the unearned portion of the policies' premiums; and that plaintiff's recovery in the present case not only unjustly enriches such a company, but penalizes the defendant, who owed a duty to his customers to protect them and to not transmit to it money that it had not earned.

Defendant says it does not appear that this court has ever dealt with a situation like the one here presented, and he cites the cases of Union Mutual Casualty Insurance Corporation v. Insurance Budget Plan, 291 Mass. 62, 195 N.E. 903, 98 A.L. R. 1422; Downey v. Humphreys, 102 Cal. App.2d 323, 227 P.2d 484, and Insurance, Inc. v. Furneaux, 62 N.M. 249, 308 P.2d 577 in support of his position.

Plaintiff says these cases are not applicable here in view of the fact that, under the insurer's hereinbefore quoted Agency Agreement with defendant, he was its fiduciary, and held the unearned premiums in trust for it. In support of his position,

he cites such cases as Leterman v. Pink, 249 App.Div. 164, 291 N.Y.S. 249; Citizens Mutual Auto Ins. Co. v. Gardner, 315 Mich. 689, 24 N.Y.S.2d 410; Bohlinger v. Mayville Realty Co., Sup., 135 N.Y.S.2d 865; Clay v. Independence Mutual Ins. Co. (Mo.) 359 S.W.2d 679; Arnold v. Wheeler (Tex.Civ.App.) 304 S.W.2d 368, and others.

We agree, generally, with plaintiff's position. Although there may be no material distinction between the pertinent provisions of the general agency contract entered into between the Public Indemnity Corporation and the defendant agent in the Downey case, supra, and the above quoted provisions of the Agency Agreement involved here, the Court, after recognizing, in that case, that if said agent collected the premiums as a trustee for the insurer "He would be obliged to remit them" to it, found on the basis of the evidence there, that the parties' relationship was not governed by that contract, but by an oral understanding between said defendant agent and the International Reinsurance Corporation that had taken over Public Indemnity Corporation. After carefully examining the opinion in that case, we think that a fundamental part of it was the determination that, on the basis of that oral understanding, and the parties' course of dealing, their relationship was merely that of debtor and creditor, rather than trustee and cestui que. As it appears that such a factual premise inheres in the general rule quoted, in defendant's brief, from that opinion, we believe the rule has no application here, where it is undisputed that the parties' rights, in the matter of unearned premiums, were affected by their Agency Agreement. As said in Bohlinger v. Mayville Realty Company, supra: "It is fundamental that the agent, when he accepts the premiums on the policies issued, acts for the company and is under a duty to conform to the terms of the contract and remit the premiums as outlined in the said agreement."

Nor do we consider the Union Mut. Cas. Ins. Corp. Case, supra, applicable here.

There, the insurance policies involved were cancelled when the insurer corporation ceased doing business in the State of Massachusetts at the request of that State's insurance commissioner *before* said corporation was dissolved, or a receiver was appointed for it. In that case, the insurance policies were issued under arrangements making cash payment in advance of their premiums unnecessary, and the defendant agent collected money on these premiums *after* the policies were cancelled, and applied it to the payment of premiums on new replacement policies he procured for those customers from another insurance company. There, the court determined the respective rights of the plaintiff receiver, and the defendant agent, on the basis of principles that control where policies are cancelled in the ordinary course of business, the court observing that the plaintiff did not contend that in that situation, the policyholders would not be entitled to the return of any unearned premiums, and further observing that " * * * the agency agreement indicates that policyholders would be so entitled."

■■ It is our opinion that the rights of the litigants in this case to the unearned premiums involved cannot be determined on the basis of the principles governing such premiums when policies are cancelled in the ordinary course of business, in view of the afore-mentioned stipulation to the effect that the cancellations were not even suggested to the policyholders until *after* the appointment of a receiver for the insurer. As far as the record shows, the order appointing the receiver was also an adjudication of the insurer's insolvency. If this be true—and there is no representation or contention to the contrary—then as soon as that adjudication was made and/or became effective, the rights of the plaintiff receiver, and those having claims against the insurer for unearned premiums, became fixed; and those claimants were then entitled to no preference over other creditors. See Clay v. Independence Mutual Insurance Co., supra (Mo., 359 S.W.2d 679, 684). If the trial court, in the present case, had

rendered judgment for defendant, that would, by indirect effect, have accorded them such preferred treatment. See Garrison v. Edward Brown & Sons, 25 Cal.2d 473, 154 P.2d 377, 382. Under all of the applicable legal precedents we have examined, plaintiff was entitled to judgment in this case. In addition to the above, see also the discussion in Langdeau v. Bouknight, 162 Tex. 42, 344 S.W.2d 435, and particularly the quotations therein from Eng v. Wheeler (Tex.Civ.App.) 302 S.W. 2d 263, and Wheeler v. Clark (Tex.Civ. App.) 306 S.W.2d 158.

In plaintiff's brief, he asserts that he is entitled to an additional attorney fee for the services of his attorney in this appeal. The foundation of the trial court's allowance of $200.00 as a fee for his attorney there was evidently the hereinbefore quoted provision of the Agency Agreement's Addendum, to the effect that any expense incurred by the insurer for legal fees on account of litigation resulting from the Agent's failure to comply with the terms of the Agency Agreement would be deemed the obligation of the Agent. As defendant stands adjudged of failing to comply with the terms of said contract, at a time when the rights of the parties thereto had become fixed, and his claimed defense for not remitting the premiums involved was without any legal foundation, there seems to be no question but that he is subject to the enforcement of this contract provision. There is no intimation in this case that the trial court's fee allowance contemplated compensation for services of plaintiff's attorneys beyond those rendered in that court (see Welfare Federation Act, Committee of 1000 v. Richardson, Okl., 281 P.2d 428, 431) and our research on the subject indicates that the weight of authority is that: "A contract for a reasonable attorney's fee in enforcing its provisions embraces an allowance for legal services rendered upon appeal as well as during the trial." See Dankert v. Lamb Finance Company, 146 Cal.App.2d 499, 304 P.2d 199, 201, and other cases discussed in the annotation at 52 A.L.R.2d 863, 865 ff. and A.L.R.2d Later Case Service, supplementing 49–55 A.L.R.2d at p. 288. Accordingly, we hold that plaintiff is entitled to an additional allowance in the sum of $200.00 as the fee for the services of his attorneys in this appeal. Plaintiff is therefore allowed said additional sum of $200.00 for his attorneys fees in this appeal, and said sum is hereby ordered added to the costs thereof, and, as such, taxed against the defendant. His brief also "prays" for "judgment on the supersedeas bond posted by defendant", but this is denied, as the record before us reflects nothing about any such bond.

In accord with the foregoing, the judgment of the trial court is hereby affirmed.

All the Justices concur.